UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

BRANDON DESHAWN BRADFORD,

        Plaintiff,                        Case No. 2:12-cv-323

v.                                         Honorable Gordon J. Quist

BARAGA MAXIMUM
CORRECTIONAL FACILITY, et al.,

        Defendants.

_____/

REPORT AND RECOMMENDATION

        Plaintiff Brandon DeShawn Bradford, a former inmate, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include Baraga Maximum Correctional Facility (AMF) Warden Curly, AMF Deputy Warden Ken Trepley, AMF Deputy Warden Shane Place, AMF Inspector Unknown Petaz, AMF Assistant Resident Unit Supervisor Robert Warr, Marquette Branch Prison (MBP) Assistant Deputy Warden T. Dahl, MBP Warden Napel, MBP Deputy Warden Larson, and MBP Inspector Contreras.[1]

        In Plaintiff's complaint, he alleges that he was transferred from the Baraga Maximum Correctional Facility (AMF) to the Marquette Branch Prison (MBP) on March 26, 2012, in an attempt to protect Plaintiff from a known threat on his life. On Plaintiff's arrival at MBP, he was

---

[1] Defendant Baraga Maximum Correctional Facility was dismissed from this action on March 22, 2013.

placed in the general population, despite his repeated requests to be placed in protective custody. Plaintiff states that Defendants Warden Curly, Deputy Warden Ken Trepley, Deputy Warden Shane Place, Inspector Unknown Petaz, Assistant Resident Unit Supervisor Robert Warr, Assistant Deputy Warden T. Dahl, Warden Napel, Deputy Warden Larson, and Inspector Contreras were all involved in denying his requests for protective custody. On March 31, 2012, Plaintiff was assaulted by two unknown inmates who were carrying out a hit that had been placed on Plaintiff by a known gang / security threat group. As a result of this assault, Plaintiff was seriously injured and was hospitalized.

Plaintiff claims that Defendants violated his rights under the Eighth Amendment. Plaintiff seeks damages and equitable relief.

Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. The time for filing a response has passed and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in

support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant Dahl asserts that he is entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies against him. A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1],

at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues

shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 120 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Defendants assert that Plaintiff filed grievance number MBP-12-04-0875-03b addressing the actions taken by Defendants in this case. *See* Defendants' Exhibit F, docket #66-7. In the step I grievance number MBP-12-04-0875-03b, Plaintiff named Defendants Contreras, Larson, and Napel, as well as Corrections Officer Pelko. However, as asserted by Defendants, Plaintiff did not name Defendant Dahl. *Id*. at p. 6 of 6. Nor did Plaintiff name Defendant Dahl in his step II and

- 5 -

III appeals. *Id.* at pp. 3-4 of 6. Therefore, Plaintiff did not exhaust his administrative remedies against Defendant Dahl.

As noted above, Plaintiff claims that Defendants violated his rights under the Eighth Amendment bu failing to protect him from being assaulted. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with "deliberate indifference" to a substantial risk that the defendant would cause prisoners serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*,

468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir.1990); *McGhee v. Foltz*, 852 F.2d 876, 880-881 (6th Cir.1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir.1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.")

During his deposition, Plaintiff attested that in April of 2010, he cooperated with a Michigan State Police investigation concerning a stabbing by inmate Shaun Boyer. *See* Defendants' Exhibit B, p. 16, docket #66-3. Plaintiff knew inmate Boyer because they were involved in illegal activity together. Boyer, who was a member of a gang, stabbed a member of another gang while Plaintiff was present. *See* Defendants' Exhibit B, pp. 16-20, docket #66-3. In November of 2011, Plaintiff became aware that other inmates at AMF knew about his cooperation with the Michigan State Police. Plaintiff attested that a member of the Nation of Islam came to segregation and showed Plaintiff a copy of the state police report and told him that everyone on the yard wanted to kill him. *Id.* at p. 20.

According to the Request for Protection / Investigation Report, Defendant Warr received an anonymous kite on March 9, 2012, stating that Plaintiff would be stabbed if he was transferred out of A-wing because of his cooperation with the Michigan State Police. *See* Defendants' Exhibit C. Plaintiff requested protective custody and was placed in temporary segregation. An investigation was conducted, after which the Security Classification Committee (SCC) determined that a protective environment was not warranted. However, a special problem

offender notice (SPON) was generated and Plaintiff was classified to administrative segregation pending a transfer to MBP. Defendant Warr noted that the investigation showed that the threats against Plaintiff were not fabricated and that a situation had developed between Plaintiff and inmate Boyer. In addition, Defendant Warr concluded that Plaintiff's "security needs can be met in a GP setting but it is recommended that a SPON be generated to keep these two prisoners separated." *Id.*

Plaintiff was transferred to MBP on March 26, 2012, and was interviewed by Acting Deputy Warden Kenneth Niemisto and Resident Unit Manager Denver McBurney. Plaintiff did not request protection during the interview, nor did he refuse to go to the general population. *See* Defendants' Exhibit D: McBurney Affidavit, Exhibit E: Niemisto Affidavit, and Exhibit F: Response to Grievance No. MBP 12-04-0875-03b. Plaintiff was assigned to G-unit, where he recognized a prisoner who had previously been housed at AMF. This prisoner was known as "Sir Mike" and was a member of the Latin Counts. Upon seeing Plaintiff, Sir Mike commented on Plaintiff's presence. Plaintiff then heard Sir Mike talking to three or four other guys, saying "there you go right there." Plaintiff did not go to chow and instead called Officer Ninnis over and requested protection. Officer Ninnis asked Plaintiff for names, but Plaintiff could only give him the name "Sir Mike." *See* Defendants' Exhibit B, pp. 37-38. Officer Ninnis spoke to Officers Cole and Pelcoa and Plaintiff was moved to B-unit. *Id.* at pp. 39-40.

When Plaintiff arrived on B-unit, he wrote a letter to Defendant Napel, explaining the situation and requesting protection. Plaintiff made copies of the letter for Defendants Dahl, Larson, and Contreras. Plaintiff claims that he placed all the letters in the prison mail system on March 26, 2012. Plaintiff never received a response. *Id.* pp. 40-43. Plaintiff states that on

March 26, 2012, he was attacked in the yard by prisoners Edwards-Hill and Fulgham-Bey[2], who were members of the Moorish Science Temple of America. *Id.* at pp. 44-53. Inmates Edwards and Fulgham were found guilty of assault and battery on Plaintiff. *See* Defendants' Exhibits I and J.

Plaintiff was taken to health care, where he recalls a female officer saying "So Bradford, they finally got you, huh?" When Plaintiff asked what she meant, she told him that "they" had been looking for Plaintiff all over the state. Defendants' Exhibit B, p. 54. Plaintiff was then rushed to the hospital, where he remained for a few hours before being sent back to MBP. Plaintiff states that he had been stabbed in the ear and still suffers from some hearing problems as a result. Plaintiff also states that he continues to have marks on his face, and that he suffers from occasional headaches. *Id,* at pp. 55-57. Upon his return to MBP, Plaintiff was placed in protective custody. *Id.* at p. 58.

With regard to the Defendants who were employed at AMF, specifically Curly, Trepley, Place, Petaz, and Warr, the court notes that once Plaintiff was transferred to AMF, they were not involved with protecting Plaintiff from harm. When Plaintiff was confined at AMF, Defendants evaluated the threat to Plaintiff's safety and determined that he could be safely housed at another facility in the general population. Defendants placed a SPON in Plaintiff's file indicating that he should not be housed with inmate Boyer. Therefore, the court concludes that Defendants Curly, Trepley, Place, Petaz, and Warr took "reasonable measures" to guarantee Plaintiff's safety while he was in their care. Accordingly, Defendants Curly, Trepley, Place, Petaz, and Warr were not deliberately indifferent to Plaintiff's risk of injury.

---

[2]Jarret Edwards #497391 and Johnvon Fulgham #251132. *See* Defendants' Exhibits G and H.

In addition, MBP Defendants Dahl, Napel, Larson, and Contreras, were not present during Plaintiff's meeting with Niemisto and McBurney when the decision was made to send Plaintiff to the general population. *See* Defendants' Exhibits D and E. Plaintiff claims that Defendants Dahl, Napel, Larson, and Contreras failed to respond to his letter requesting protection and that this exhibited deliberate indifference. Defendant Napel, Larson, Dahl, and Contreras attest that they do not recall receiving such a letter and were unaware of any threat on Plaintiff's life prior to the date of the assault. *See* Defendants' Exhibits L, M, N, and O. In addition, Defendants assert that the letter did not mention a threat from a particular individual.

Plaintiff offers a copy of the letter to Defendant Napel as Exhibit 1 to his complaint. *See* docket #1-2. The letter states:

> I spoke with [Corrections Officer] Ninnis and told him the [whole] situation. He asked for names, but I could only tell him one of the names because I know the guy personally! I then spoke with [Corrections Officer] Pelcoa. He moved me over here to BB12. I am telling you Mr. Napel, it doesn't matter where you move me! If its not protection I will be stabbed. This is a statewide hit, please acknowledge this. Place me in protection please.

*Id.*

Because Defendant's assertion that they did not receive Plaintiff's letters is in direct conflict with the evidence presented by Plaintiff, the undersigned concludes that there is an issue of fact regarding whether Defendants Napel, Larson, Dahl, and Contreras were aware of the threat to Plaintiff prior to the assault. Therefore, Defendants Napel, Larson, Dahl, and Contreras are not entitled to summary judgment on the merits. However, as noted above, Defendant Dahl is entitled to summary judgment due to Plaintiff's failure to exhaust administrative remedies against him.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar

as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated by Defendants Curly, Trepley, Place, Petaz, and Warr, they are entitled to qualified immunity. However, because there is an issue of fact regarding whether Defendants Napel, Larson, Dahl, and Contreras were deliberately indifferent to a threat against Plaintiff, they are not entitled to qualified immunity.

Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Docket #65) be granted, in part. Should the court adopt the report and recommendation in this case, the only remaining claims would be against Defendants Napel, Larson, and Contreras.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   April 23, 2014